**CITY OF WAUKESHA, Plaintiff,**

v.

**VIACOM, INC., Amron LLC, A.W. Holding Corp., Defendants.**

No. 01–C–0872.

United States District Court, E.D. Wisconsin.

Sept. 24, 2002.

Jeffrey P. Clark, Donald P. Gallo, Carolyn A. Sullivan, Reinhart Boerner Van Deuren, Milwaukee, Curt R. Meitz, Waukesha City Atty Office, Waukesha, for Plaintiff or Petitioner.

Douglas B. Clark, Amy K. Kasper, Foley & Lardner, Madison, Paul Bargren, Foley & Lardner, Milwaukee, for Viacom, Inc.

K. Scott Wagner, Hale & Wagner, Milwaukee, Richard Greenberg, Greensfelder Hemker & Gale, St. Louis, MO, for Defendant Amron Corporation.

William S. Roush, Jr., Davis & Kuelthau, Milwaukee, for Defendant A.W. Holding Company.

## ORDER

STADTMUELLER, District Judge.

Plaintiff City of Waukesha ["City"] owns the West Avenue Landfill, a landfill which has been contaminated with various hazardous substances, and seeks contribution costs pursuant to section 113 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ["CERCLA"], 42 U.S.C. § 9613, from three successors of a corporation that allegedly disposed of hazardous substances at the landfill. Defendant Viacom, Inc. ["Viacom"] filed a motion to dismiss, arguing that the text of § 113(f)(1) allows a potentially responsible party ["PRP"] to file a contribution action only if it has a pending or adjudged administrative abatement order, pursuant to § 106, or a cost recovery action, pursuant to § 107, against it. Defendant Amron Corp. ["Amron"]

joined in the motion. Because the text of § 113(f)(1) does not support the defendants' position, the court denies the defendants' motion to dismiss. For the reasons stated below, the court also grants the City's motions for leave to file a Second and Third Amended Complaint, in which the City seeks to substitute Viacom for Viacom International, Inc. and to add a Resource Conservation and Recovery Act ["RCRA"] claim and common law claims, including nuisance, unjust enrichment, and negligence, against the defendants.

## BACKGROUND

The City has filed a complaint against defendants Viacom, Amron, and A.W. Holding Corp. ["A.W. Holding"], seeking contribution costs pursuant to CERCLA. The underlying claim arose from alleged environmental contamination at the West Avenue Landfill located in Waukesha, Wisconsin. The City was the owner and operator of the landfill, and between approximately May 1996 and February 1970, Amron Corporation, predecessor of the three defendants in this case, disposed of hazardous substances at the landfill. The City alleges that it is investigating and cleaning up hazardous substances at the landfill in accordance with the National Contingency Plan. The City seeks contribution from the defendants for the costs of investigating, removing, remediating and/or cleaning up hazardous substances that have been released or threaten to be released from the landfill.

## DISCUSSION

### I. Motion to Dismiss

Defendants Viacom and Amron argue that § 113(f)(1) does not allow a PRP to seek contribution costs from another PRP in the absence of a pending or final administrative abatement order, pursuant to § 106, or a cost recovery action, pursuant to § 107. The text of § 113(f)(1) provides:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) [§ 107(a)] of this title, during or following any civil action under section 9606 [§ 106] of this title or under section 9607(a) [§ 107(a)] of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

*Id.* The defendants emphasize that the first sentence states that a PRP may seek contribution "during or following" an action under § 106 or § 107(a). *Id.* The defendants argue that this language necessarily implies that a PRP may not seek contribution *before* a § 106 or § 107(a) action is filed. The last sentence of this section, the "savings clause," appears to reject outright the defendants' interpretation: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§ 106] or [§ 107]." *Id.* According to the defendants, the savings clause means merely that § 113(f)(1) does not preclude PRP's from raising contribution claims based on state law.

■ The defendants' position is untenable. Section 113(f)(1) does not state that a PRP may bring an action *"only"* during or following a § 106 or § 107(a) action. If Congress intended to limit PRP's right to seek contribution in such a manner, it could have done so. The defendants argue that the "during or following" language is

rendered superfluous if a PRP is able to raise contribution claims before a § 106 or § 107(a) is initiated. In reconstructing the statutory language to include the word "only," however, the defendants miss a perfectly reasonable explanation for the "during or following" clause: Congress wanted to explicitly clarify that a PRP need not wait until a final judgment of liability before seeking contribution costs. *See Aviall Services, Inc. v. Cooper Indus.,* 263 F.3d 134, 149 (5th Cir.2001), *reh'g, en banc, granted by* 278 F.3d 416 (5th Cir. 2001) (Weiner, J., dissenting) (arguing that the "during or following" language in § 113(f)(1) eschews the restrictions in some jurisdictions that tort-feasors may only seek contribution from each other after judgment has been rendered against them and that the "during or following" language embraces the more expansive Restatement view of contribution).

The defendants' argument that a § 113(f)(1) contribution claim is barred in the absence of a § 106 or § 107(a) action is especially bizarre given the last sentence of the section: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§ 106] or [§ 107]." The plain and clear language of this sentence squarely rejects the defendants' position. According to the defendant, the savings clause means merely that § 113(f)(1) does not prohibit a PRP from seeking contribution under *state* law. The defendants' argument is not merely a narrow interpretation of the section; it is a re-write without a basis in law. The de-

fendants derive support from *Aviall Services, Inc. v. Cooper Industries, Inc.,* 263 F.3d 134 (5th Cir.2001), a split decision upon which a rehearing *en banc* was granted.[1] The *Aviall* majority concluded that "the savings clause was likely intended to preserve the state law-based claims of contribution," 263 F.3d at 140, citing *PMC, Inc. v. Sherwin–Williams Co.,* 151 F.3d 610, 618 (7th Cir.1998) (analyzing CERCLA savings clause under 42 U.S.C. § 9652(d)). As the *Aviall* dissent noted, however, CERCLA's general savings clause, the clause at issue in *PMC,* contains an express preservation of state law claims and is, therefore, distinguishable with the savings clause in § 113(f)(1). See 42 U.S.C. § 9652(d) ("Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under *other Federal or State law, including common law,* with respect to releases of hazardous substances or other pollutants or contaminants.") (emphasis added); *Aviall,* 263 F.3d at 147 n. 7 (Weiner, J., dissenting). The defendants, therefore, base their interpretation of § 113(f)(1) on the analysis of an entirely different statutory section. Needless to say, the defendants' position would be bolstered tremendously if the savings clause in § 113(f)(1), like the clause in § 152(d), actually mentioned "state" law. Rather than adopt the defendants' baseless and contorted interpretation of the clear language of § 113(f)(1), the court believes the savings clause means exactly what it says: "*Nothing* in § 113(f)(1)-particularly not its "during or following" language-diminishes the

---

**1.** "Derive support" may be an understatement as the defendants' motion relies heavily upon *Aviall.* As counsel for Viacom informed the court, when a rehearing is granted in the Fifth Circuit, the original opinion is vacated. *See* 5th Cir. R. 41.3 ("Unless otherwise expressly provided, the granting of a rehearing *en banc* vacates the panel opinion and judgment of the court and stays the mandate.").

This rule is apparently unique to the Fifth Circuit. Because the defendants' motion relies so heavily upon *Aviall,* it is difficult to find anything left of the defendants' motion in light of the order granting a rehearing *en banc.* Nonetheless, the court analyzes the defendants' arguments, including those advanced in *Aviall.*

right of any person to bring an action for contribution *in the absence of a civil action under § 106 or § 107(a)." Aviall,* 263 F.3d at 149 (dissent). Based upon the court's analysis of the statutory text, the court denies the defendants' motion to dismiss.

The court also notes that the defendants cannot find any other circuit authority to support their motion. Aside from *Aviall,* which the court treats as vacated, the defendants attempt to bloat one sentence, which the defendants admit is dicta, from *Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc.,* 107 F.3d 1235, 1241 (7th Cir.1997). The sentence, set off in parentheses, provides:

> (We acknowledge, as other courts have, that this seems to provide a disincentive for parties voluntarily to undertake cleanup operations, because a § 106 or § 107(a) action apparently must either be ongoing or already completed before § 113(f)(1) is available. This appears to be what the statute requires, however.)

*Id.* Aside from the fact that this section of *Rumpke* is not essential to the holding in *Rumpke* and that it is set off in parentheses, the section contains no explicit analysis of the statute or citation to other cases and is qualified by the use of the words, "apparently" and "appears." Unfortunately, a district court within the Seventh Circuit did elevate the language in *Rumpke* as the basis of its holding. *See Estes v. Scotsman Group, Inc.,* 16 F.Supp.2d 983, 989 (C.D.Ill.1998); *but see Ninth Ave. Remedial Group v. Allis Chalmers Corp.,* 974 F.Supp. 684, 691 (N.D.Ind.1997) (refusing to "be guided by the equivocal dicta in *Rumpke* " and holding that "[i]n light of

the express language of Section 113(f)(1) ... [a] PRP can bring a section 113 action even when no prior or pending section 106 or 107 civil actions have occurred"). *Estes,* however, did not consider that the *Rumpke* language was merely dicta; *Estes* recognized *Ninth Avenue* but did not explain why it was not persuasive; and *Estes* did not appear to analyze the language of § 113, but merely relied upon *Rockwell Intern. Corp. v. IU Intern. Corp.,* 702 F.Supp. 1384, 1389 (N.D.Ill.1988) for the proposition that the savings clause merely preserves contribution claims based on state law. *See Estes,* 16 F.Supp.2d at 989–90. *Rockwell,* in turn, offers no authority or analysis in support of this view. *See Rockwell,* 702 F.Supp. at 1389.[2]

In a footnote, the defendants acknowledge that there are circuit court cases in which CERCLA § 113(f) contribution claims have been allowed to proceed without a pending or adjudged CERCLA § 106 or § 107(a) claim against the party seeking contribution. (Viacom's Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint, at 10 n. 2); *see, e.g., Crofton Ventures LP v. G&H Partnership,* 258 F.3d 292 (4th Cir.2001); *Amoco Oil v. Borden, Inc.,* 889 F.2d 664 (5th Cir.1989). The defendants dismiss these cases because the parties did not raise or dispute whether such contribution actions were permissible. *Id.* These cases, however, "underscore[] the common understanding among courts and litigants alike that the plain language of § 113(f)(1) does not require a PRP to wait until it is haled into court to seek contribution under the statute." *Aviall,* 263 F.3d at 152 (dissent). In

---

**2.** *Rockwell* actually rejects the defendants' position, *see id.* ("We reject both interpretations ...."), and does not aid either party in this action with respect to the pertinent issue. *See Aviall,* 263 F.3d at 154 (dissent) (*"Rockwell,* then, does not answer, one way or the other, the core question of this appeal: whether a party that has already incurred cleanup costs and conceded to being a PRP can seek contribution from another putative PRP under § 113(f)(1) in the absence of an ongoing or adjudged § 106 or § 107(a) action against it.").

sum, based on the text of § 113(f)(1), the court denies the defendants' motion to dismiss.

## II. Motions for Leave to File Second and Third Amended Complaints

On April 15, 2002, the City filed a motion for leave to file a Second Amended Complaint. The City desired to substitute Viacom International for Viacom and desired to add common law claims, including statutory nuisance, unjust enrichment, and negligence, against all of the defendants and a claim under RCRA against all of the defendants aside from Viacom International. The City did not seek to sue Viacom International under RCRA because the statutorily mandated ninety day period had not passed since the City gave Viacom International a formal RCRA notice of intent to sue on March 28, 2002. On July 12, 2002, following the ninety day period, the City filed a motion for leave to file a Third Amended Complaint, adding a RCRA claim against Viacom International.

A.W. Holding opposes the City's motion for leave to file a Second Amended Complaint on the basis that the City's proposed claims are futile. Specifically, A.W. Holding argues that the claims are futile because A.W. Holding is not alleged to have owed or breached any cognizable legal duty of care it owed to the City, the City's equitable claims are barred by the equitable doctrine of "unclean hands," and there is no factual or legal basis to add the RCRA claims. Viacom filed a separate brief opposing the City's motion. Viacom repeats its argument that the City is barred from seeking contribution pursuant to CERCLA § 113(f)(1). Viacom also stated that Viacom International had not received formal notice required to state a claim against it under RCRA. In light of the City's motion for leave to file a Third Amended Complaint, Viacom acknowledges that the City issue a Notice of Intent to follow suit on March 28, 2002.

Finally, Viacom argues that because the City owns the property at issue, the City cannot bring nuisance claims against Viacom. For the reasons stated below, the court grants the City's motions for leave to file a Second and Third Amended Complaint.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend, however may be denied when, among other reasons, the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 183, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment ... the leave sought should, as the rules require, be 'freely given.'"); *Brunt v. Service Employees International Union*, 284 F.3d 715, 720 (7th Cir.2002) (citation omitted). An amendment is futile only if it fails to allege any facts which could conceivably support a valid theory of liability, and the burden on the objecting party to show futility is, thus, substantial. *Acme Printing Ink Co. v. Menard, Inc.*, 881 F.Supp. 1237, 1243 (E.D.Wis.1995), *citing Goulding v. Feinglass*, 811 F.2d 1099, 1103 (7th Cir.1987). The decision to grant or deny a motion to file an amended pleading is a matter within the discretion of the district court. *Brunt*, 284 F.3d at 720 (citation omitted).

A.W. Holding has not shown that the City's RCRA and common law claims would be futile. A.W. Holding first argues that it cannot be found negligent for injury to property because it merely hired a transporter to remove and dispose of its waste. (A.W. Holding's Brief in Opposi-

tion, at 3–5), *citing Fortier v. Flambeau Plastics Co.*, 164 Wis.2d 639, 476 N.W.2d 593 (Ct.App.1991). The City disputes the factual basis of this argument, arguing that A.W. Holding's predecessor hauled some waste to the landfill itself. (*See* City's Reply Brief, at 4 n. 6.) Additionally, the fact that A.W. Holding did not select the landfill or directly transport the waste does not allow the court to determine at this stage of the litigation that A.W. Holding exercised reasonable care to avoid the risk of foreseeable harm to others. Similarly, the court cannot determine at this stage that the City is seeking relief from the consequences of its own acts or that it is guilty of substantial misconduct regarding the landfill. Consistent with the allegations of the City's complaint, the City appears to seek a judgment against A.W. Holdings based on the actions of its predecessor, not the actions of the City. Considering the liberal standard the court affords to amending complaints, A.W. Holding has not met the substantial burden of showing that the amended complaint fails to allege facts which could possibly support a valid theory of liability.

Furthermore, Viacom's arguments do not provide a sufficient basis for the court to deny the City's motions for leave to file a Second and Third Amended Complaint. As already stated above, the City is not barred from seeking contribution costs pursuant to CERCLA § 113(f)(1). The City has also provided Viacom International with the required ninety day notice of its intent to commence suit pursuant to RCRA. Viacom's only remaining argument is that the City, not Viacom, owns the property at issue, and the City, therefore, cannot bring nuisance claims against Viacom.

In support of its argument, Viacom cites the following definition of nuisance from *State v. Quality Egg Farm, Inc.*, 104 Wis.2d 506, 311 N.W.2d 650, 656 (1981):

"A nuisance is a wrong which may arise from the unreasonable or unlawful use by a person of his own property." *Id.* Viacom emphasizes "his own property" in the former definition, but the Wisconsin Supreme Court in *Quality Egg* did not make such an emphasis, stating several definitions of nuisance which do not contain an ownership requirement. *See, e.g., id.* ("A nuisance is an unreasonable activity or use of property that interferes substantially with the comfortable enjoyment of life, health, safety of another or others."); *see also* Restatement (Second) of Torts § 821(d) (1979) ("A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land."). Moreover, in *Northridge Co. v. W.R. Grace & Co.*, 205 Wis.2d 267, 556 N.W.2d 345, 351–52 (Ct.App.1996), the Wisconsin Court of Appeals rejected the defendant's argument that the nuisance claim fails because the alleged tortfeasor no longer owns or controls the nuisance-causing property. *Northridge* described a line of cases which support this court's belief that the City may state a claim for nuisance against the defendants even though the defendants may not have owned the property from which the nuisance originated. *See id.* The court finally notes section 822 of the Restatement (Second) of Torts, which articulates the standard for liability for a private nuisance and which has been adopted in Wisconsin, does not require ownership of property. The section provides:

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for ab-

normally dangerous conditions or activities.

*Id.* The City contends that the defendants caused an invasion of another's private use and enjoyment of land that was intentional and unreasonable or otherwise actionable under negligence concepts. The court, therefore, does not believe that the City's nuisance claim is futile, and the court will grant the City's motions for leave to file a Second and Third Amended Complaint.

Accordingly,

**IT IS ORDERED** that defendant Viacom and defendant Amron's motion to dismiss be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the City's motions for leave to file a Second and Third Amended Complaint be and the same are hereby **GRANTED**; the defendants shall file a response to the Third Amended Complaint within twenty days of this order.